In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00207-CR


______________________________




FELIPE RUBIO GASPAR, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 336th Judicial District Court


Fannin County, Texas


Trial Court No. 22386




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Felipe Rubio Gaspar appeals. We have received a motion from counsel asking us to extend
the time for filing his notice of appeal. He states that Gaspar was convicted June 12, 2008, that a
motion for new trial and arrest of judgment was filed, and that appellate counsel was appointed. 
Counsel states that he asked the district clerk whether a notice of appeal had been filed and was told
that it had been. However, on October 15, 2008, counsel discovered that no notice of appeal had
been filed, and he filed a notice of appeal October 16, 2008.

 With conviction and sentencing occurring June 12, 2008, and with a motion for new trial
being timely filed, the notice of appeal was due to be filed no more than ninety days later, on
September 10, 2008. The rule also provides a fifteen-day grace period, which expired September 25,
2008. See Tex. R. App. P. 26.2. The information before this Court reflects that no notice of appeal
or motion to extend time was filed until over twenty days after the expiration of the grace period. 

 Our jurisdiction over an appeal is circumscribed by statute and rule, and we are not permitted
to engage in actions that will enlarge that jurisdiction. Without a timely filed notice of appeal, this
Court is without jurisdiction. Rodarte v. State, 860 S.W.2d 108 (Tex. Crim. App. 1993); see Slaton
v. State, 981 S.W.2d 208 (Tex. Crim. App. 1998). Further, courts of appeals may not employ Rule 2
of the Texas Rules of Appellate Procedure to suspend appellate time limits and thus expand our
jurisdiction. Garza v. State, 896 S.W.2d 192 (Tex. Crim. App. 1995); see Tex. R. App. P. 2.

 Therefore, based on the information before us, we must conclude the notice of appeal is
untimely. (1)

 We dismiss the appeal for want of jurisdiction.




 Jack Carter

 Justice


Date Submitted: October 22, 2008

Date Decided: October 23, 2008


Do Not Publish

1. We are relying on counsel's statements concerning the timing of the events giving rise to the
notice of appeal. The relief sought must be granted by the Texas Court of Criminal Appeals.


" SemiHidden="false"
 UnhideWhenUsed="false" Name="Light List"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00039-CV

                                                ______________________________

 

 

                             IN THE
MATTER OF THE MARRIAGE OF

KAYVAN KAMALI AND
BANAFSHEH SAFAR ALIZADEH

AND IN THE INTEREST OF K.
T. K., A CHILD

 

 

                                                                                                  


 

 

                                       On Appeal from the 307th
Judicial District Court

                                                             Gregg County, Texas

                                                     Trial Court No. 2010-1347-DR

 

                                                                                                   

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                                        Opinion by Justice Moseley








                                                                   O P I N I O N

 

            Dr.
Kayvan Kamali sponsored the
immigration of Banafsheh Safar Alizadeh
from Iran to the United States of America and married her.  The marriage had lasted only about two and
one-half years when Kamali sought a divorce.[1]  Under an affidavit for sponsorship of an
alien seeking residency in the United States, the sponsor is required to
execute an affidavit pledging to provide support at a level not less than 125%
of the United States poverty level for an unlimited period, the obligation for
support terminating only upon the occurrence of any of five specified events.  8 U.S.C.A. § 1183a (West, Westlaw
current through 2011); 8 C.F.R. 213a.2 (West, Westlaw current through 2011).  In the divorce decree, the trial court
acknowledged the existence of the affidavit for support, but decreed that the
obligation for support ended after thirty-six months from the date of entry of
the divorce decree.  Alizadehs
appeal complains the trial court erred by limiting Kamalis
support payments to a period of thirty-six months.[2]  We sustain Alizadehs
point of error.

Affidavit of Support

            United
States immigration law provides a procedure for a resident of the United States
to sponsor a noncitizen for immigration into the country.  As a condition precedent to granting
immigration status, the government requires the sponsor to execute an affidavit
(Form I-864 Affidavit of Support), wherein the sponsor promises to support the
immigrant seeking admission to the United States at a level not less than 125%
of the national poverty level.  Id. 
The sponsors obligation to support the immigrant continues until one of
the following circumstances occurs:  (1)
either the immigrant or the sponsor dies, (2) the immigrant achieves
citizenship, (3) the immigrant leaves the United States and does not return, or
(4) the immigrant maintains employment that qualifies for Social Security for a
total of forty quarters of years.  Id.; 8 C.F.R. 213a.2.  The instructions for completing the form
specifically state that [d]ivorce does not end the
sponsorship obligation.  

            Kamali completed such an affidavit of support in order to
secure Alizadehs entry into the United States.[3]  The parties married in December 2007 and
separated in June 2010, precipitating the filing of a divorce by Kamali that same month. 
At trial, Alizadeh presented testimony from an
immigration attorney, Jose Sanchez, who explained the workings of the affidavit
of support and discussed caselaw interpreting the
document and its statutory authorization. 
Sanchez explained that the duty to support a sponsored immigrant expires
only upon one of the terminating events described above, specifically
mentioning that a divorce does not terminate a sponsors obligation of
support.  Alizadeh
also presented testimony from an accountant who said that based on the United
States poverty level available from the most recent data, 125% of that level
was $1,128.13.  The portion of the
divorce decree entered by the trial court which dealt with the obligation of Kamali to make support payments to Alizadeh
reads as follows:

Affidavit
of Support and Other Tort or Contract Claims Asserted by Banafsheh
Safar Alizadeh

 

The
Court finds that Kayvan Kamali
contractually obligated himself to support of Banafsheh
Safar Alizadeh, including but not limited to, the
claim under Form I-864, Affidavit of Support.  Kayvan Kamali will pay to Banafsheh
Safar Alizadeh the sum of $1100.00 per month for a
period of 36 months, which sum may be prepaid at any time in the total amount
of $39,600.00, with the first monthly installment being due and payable on
December 1, 2010, and a like payment of $1100.00 being due and payable on the
same day of each month thereafter until the expiration of 36 months or until
the whole of such sum is paid in full.[4]

 

            Although
we have found no Texas or United States Fifth Circuit cases specifically
interpreting or enforcing the affidavit of support,[5]  some federal courts in other
circuits across the country have addressed the impact of such an
affidavit.  An affidavit of support
creates a legally enforceable contract between the sponsor and both the United
States Government and the sponsored immigrant. 
Shumye v. Felleke,
555 F. Supp.2d 1020, 102224 (N.D. Cal. 2008) (citing Schwartz v. Schwartz, No. CIV-04-770-M, 2005 WL 1242171 (W.D. Okla.
May 10, 2005)).[6]   As stated in the instructions regarding the
affidavit, divorce is not among the conditions which terminates a sponsors
obligation.  Id. at 1024; see also Moody v. Sorokina,
830 N.Y.S.2d 399, 402 (N.Y. App. Div. 2007) (sponsored immigrants right to
support under Form I-864 affidavit of support is unaffected by a judgment of
divorcethe action was transferred to another court, which entered the
divorce, then severed it for separate trial on custody and maintenance).  

            Further,
the Tennessee Court of Appeals addressed an ex-husbands argument that he had
no obligation under such an affidavit of support to make payments to his
ex-wife until she made a showing she had received public benefits.  The court found that the affidavit
establishes a duty to support the sponsored immigrant without such a showing as
a prerequisite, and the duty of the obligor is enforceable as a contract.  Baines
v. Baines, No. E2009-00180-COA-R3-CV, 2009 Tenn. App. LEXIS 761, at **1213
(Tenn. Ct. App. Nov. 13, 2009).   

Kamalis Contractual Duty

            The
question before us is whether the trial courts order complied with the terms
of the contract, i.e., the affidavit of support. 

            The
obligation for the sponsoring affiant to support the sponsored immigrant
clearly ceases only upon the occurrence of one of a few terminating events
enumerated above.  See 8 U.S.C.A § 1183a; 8 C.F.R. 213a.2(e)(2)(i), (ii).  Divorce of
the obligor from the obligee is not among those
terminating events; specifically, the instructions to the affidavit of support
clearly exclude divorce as an event precipitating a termination of the
obligation.  The affidavit of support was
a contract between Kamali and the United States government,
enforceable by Alizadeh.[7]  8 U.S.C.A. § 1183a(a)(1)(B).  The trial courts order, limiting payments to
an arbitrary period of thirty-six months, runs afoul of the terms of the
contract.  Thus, the trial court erred by
including the limiting provision on the length of payments.  

            We,
therefore, strike the paragraph of the decree of divorce entitled Affidavit of
Support and Other Tort or Contract Claims Asserted by Banafsheh
Safar Alizadeh and substitute the following in its
stead:  The court finds that Kayvan Kamali contractually
obligated himself to support Banafsheh Safar Alizadeh under the terms of Form I-864, Affidavit of
Support.  The parties do not contest the
finding that the payment of $1,100.00 per month satisfies the current
obligation as it existed on December 13, 2010.

            Having
found error in part, the judgment is reversed in part, and we render judgment
that Kamali is obligated under the terms of his
agreement with the federal government concerning Alizadehs
immigration.  The judgment, as reformed,
is otherwise affirmed.

 

 

 

                                                                        Bailey
C. Moseley

                                                                        Justice

 

Date
Submitted:          November 16, 2011

Date
Decided:             December 7, 2011

 











[1]Originally appealed to the Twelfth Court of Appeals,
this case was transferred to this Court by the Texas Supreme Court pursuant to
its docket equalization efforts.  See
Tex. Govt
Code Ann. § 73.001 (West 2005). 
We are unaware of any conflict between precedent of the Twelfth Court of
Appeals and that of this Court on any relevant issue.  See Tex.
R. App. P. 41.3.

 





[2]In
the prayer for relief on appeal, Alizadeh also
requested a remand to the trial court to determine attorneys fees on
appeal.  However, this issue was not
briefed, and this request was withdrawn on oral argument.





[3]Although
neither party could produce the affidavit of support at trial, Kamali did not dispute having executed it; it appears from
the record the parties had requested a copy from the Immigration and
Naturalization Service, but had not received it at the time of trial.





[4]At
oral argument, Alizadeh indicated that the $1,100.00
per month figure representing 125% of the federal poverty guideline levels at
the time of the divorce was not in controversy.

 





[5]However,
one court did decline to address a wifes claim that the husband should have
been ordered to make support payments to her in the divorce decree; the
petition only sought a divorce.  The
final decree of divorce was modified to state that nothing in the decree barred
the wife from seeking to enforce the affidavit of support executed by the husband.  Varnes v. Varnes, No. 13-08-00448-CV, 2009 Tex. App. LEXIS 2791,
at **1720 (Tex. App.Corpus Christi Apr. 23, 2009, no pet.) (mem. op.).

 





[6]The
instructions to complete the affidavit also state:  This form is a contract between a sponsor
and the U.S. Government.   





[7]It
would appear that this is a contract between the United States government and
the sponsoring affiant with the immigrant being the third-party beneficiary of
that contract.